[S. F. No. 15297. In Bank.—June 6, 1935.]

JOAN QUINN, a Minor, etc., et al., Appellants, v. RECREATION PARK ASSOCIATION (a Corporation) et al., Defendants; SAN FRANCISCO BASEBALL CLUB, INC. (a Corporation) et al., Respondents.

George D Collins, Jr., for Appellants.

Jesse H. Steinhart, John J. Goldberg, I. I. Brown and Robert P. Cahen for Respondents.

THE COURT.—A hearing was granted in this case for the purpose of giving further consideration to the question of assumption of risk by the plaintiff. Upon a reading of the record we are satisfied with the opinion of the District Court of Appeal, written by Mr. Justice Knight, and we hereby adopt it as the opinion of this court.

"The appellant Joan Quinn, while occupying a seat in an open section of the grand stand in Recreation Park, San Francisco, witnessing a game of professional baseball which was being played between the San Francisco and Pittsburgh ball clubs, was struck and injured by a foul ball batted by a player named Suhr, a member of the Pittsburgh club. At the time the accident happened she was fourteen years of age, and through her guardian *ad litem* she joined her parents in bringing this action for damages against the

management of the park, the owners of both ball clubs, and the player who batted the ball. The action was brought to trial against two of the defendants only, namely, the San Francisco ball club and the player Suhr; and at the conclusion of plaintiff's case the trial court granted a motion made in behalf of said defendants for a directed verdict. From the judgment entered on said verdict this appeal was taken.

"Appellants contend that the proximate cause of the accident consisted in selling her an unscreened seat in the section of the grand stand near first base and requiring her to occupy said seat temporarily, after she had requested, at the time she purchased her ticket, a screened seat in that section.

"Following the filing of appellants' opening brief the respondent Suhr, appearing separately, moved for a dismissal of the appeal or an affirmance of the judgment as to him upon the ground that nowhere in said brief was any complaint made as to the trial court's ruling directing a verdict in his behalf, nor was any attempt made therein to point out any legal ground upon which they sought to hold him liable, jointly or severally, for the accident. ■ In response to the motion appellants, for the first time, advanced the theories that the act of a baseball player in batting a foul ball which falls among the spectators in the grand stand is itself negligence; and that in any event in participating in the game as a player respondent was engaged in a joint adventure with the club management which rendered him jointly and severally liable for any negligent act on its part. There is no merit in either theory. No authority has been cited in support thereof, and the fallacy of the first is self-evident. ■ As to the second, it is well settled that in order to establish the existence of a joint adventure there must be proof, as in case of a partnership, of a community interest, and a sharing of profits (14 Cal. Jur. 761; *Dempsey-Kearns Theatrical etc. Enterprises* v. *Pantages*, 91 Cal. App. 677 [267 Pac. 550]); and here there was no proof whatever tending to show, nor do appellants claim, that there was any such community interest or sharing of profits between the players and the club management, nor that the players had anything to do with the management of the park, selling the tickets, seating the spectators, or promot-

ing the exhibition itself. Therefore respondent's motion to affirm the judgment as to him should be granted.

"The respondent baseball club at the outset contends too that the appeal as to it should be dismissed or the judgment affirmed upon the ground that appellants' opening brief failed to conform to the requirements of the statute and the rules of court relating to setting forth certain portions of the pleadings, the evidence and a brief statement of the legal questions presented by the appeal. Inasmuch, however, as appellants in their closing brief have attempted to supply to some extent at least, the omissions complained of, we have examined into the merits of the appeal; but after having done so are satisfied that the action of the trial court in directing the verdict should be sustained.

"With respect to the law governing cases of this kind, it has been generally held that one of the natural risks assumed by spectators attending professional games is that of being struck by batted or thrown balls; that the management is not required, nor does it undertake to insure patrons against injury from such source. All that is required is the exercise of ordinary care to protect patrons against such injuries (*Edling* v. *Kansas City Baseball etc. Co.*, 181 Mo. App. 327 [168 S. W. 908]), and in doing so the management is not obliged to screen all seats, because, as pointed out by the decisions, many patrons prefer to sit where their view is not obscured by a screen. Moreover, the management is not required to provide screened seats for all who may apply for them. The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion (*Wells* v. *Minneapolis Baseball etc. Assn.*, 122 Minn. 327 [142 N. W. 706, Ann. Cas. 1914D, 922, 46 L. R. A. (N. S.) 606] ; *Brisson* v. *Minneapolis Baseball etc. Assn.*, 185 Minn. 507 [240 N. W. 903] ; and if as in the cases of *Wells* v. *Minneapolis Baseball etc. Assn, supra,* and *Kavofian* v. *Seattle Baseball Club Assn.*, 105 Wash. 215 [177 Pac. 776, 181 Pac. 679], a spectator chooses to occupy an unscreened seat, or as in the Brisson case, *supra,* is unable to secure a screened seat and consequently occupies one that is not protected, he assumes the risk of being struck by thrown or batted balls; and if injured thereby is precluded recovering damages therefor. As aptly said in *Cincin-*

*nati Baseball Club Co.* v. *Eno,* 112 Ohio ·St. 175 [147 N. E. 86], it is common knowledge that in baseball games hard balls are thrown and batted with such great swiftness they are liable to be thrown or batted outside the lines of the diamond, and spectators occupying positions which may be reached by such balls assume the risk of injury therefrom.

"In the present case the evidence shows that on the day in question the said Joan Quinn went to the game alone. She was a high school student, strong, mentally alert, weighing about 125 pounds, and active in several kinds of athletics, including baseball. She had been interested in professional baseball for about two years, during which time she had attended professional games at this same park about twice a week during baseball season, and she was admittedly thoroughly familiar with the rules of the game, the manner in which it was played, the frequency with which foul balls were batted into the grand stand, and the danger to spectators of being struck thereby. The grand stand in Recreation Park contained an unusually large number of screened seats, some in the section along the first-base line and others in the section behind the home plate, and according to her testimony she asked the ticket seller for a screened seat near first base and not behind the home plate. Upon reaching the grand stand, however, the usher escorted her to an unscreened seat near the first base, all of the screened seats in that section being occupied. She protested, but was told by the usher, so she testified, that she could see for herself there were no more unoccupied screened seats near the first base; and he further told her, so she said, that inasmuch as the game had already started she would have to sit down in the seat called for by her ticket until he could see what could be done about it, that she was obstructing the view of those behind her; whereupon she sat down, believing the usher would be able later to provide her with a screened seat in that section. The evidence also shows that at the time she took the seat assigned to her there were a number of unoccupied screened seats in the section behind the home plate, but, as stated, she expressed a desire to witness the game from along the first-base line, and consequently she continued to watch the game from the seat to which she had been assigned until she was struck by the ball, which thought was during the fourth inning of the game, alt

she was not certain. And she frankly admitted knowing at the time she took the unscreened seat she would be in danger of being struck by a batted ball.

"Under the law as declared in the cases above cited, therefore, it would seem clear that in accepting the unscreened seat, even temporarily, with full knowledge of the danger attached to so doing, she assumed the risk of injury, which precluded recovery of damages.

"Appellants argue that the usher in effect compelled her to sit and remain in the unscreened seat assigned to her, and that consequently the case does not fall within the operation of the legal rules declared by the cases above cited. But the evidence will not bear such construction, for it is plain to be seen that she could have taken a screened seat elsewhere in the grand stand where she would not have been subject to danger, or she could have refused to accept the seat to which she was assigned and demanded the return of her admission money. But she did neither. According to her own testimony she wanted to witness the game from the section of the grand stand near first base.

"Appellants make the further contention that the element of contributory negligence may not be considered on the appeal because it was not properly pleaded in the answer; and that in any event it was a question of fact to be determined by the jury. In the absence of any demurrer to the answer, however, the allegations thereof were legally sufficient to raise the issue (*Griswold* v. *Pacific Electric Ry. Co.*, 45 Cal. App. 81 [187 Pac. 65]; *Salvo* v. *Market Street Ry. Co.*, 116 Cal. App. 339 [2 Pac. (2d) 585]); and as to the latter point it is held generally that, in the absence of a clear showing of abuse of discretion, reviewing courts will not interfere with the rulings of trial courts in submitting or refusing to submit to juries the question of whether the contributory negligence of children of the age of fourteen years and under was such as to prevent their recovering for injuries sustained by them (*Mayne* v. *San Diego Electric Ry. Co.*, 179 Cal. 173 [175 Pac. 690]; *Wallace* v. *Great Western Power Co.*, 204 Cal. 15 [266 Pac. 281]); and there are a number of cases involving injuries to minors about the age of the girl in question here wherein it was held as a matter of law that they were guilty of contributory negligence, among them being *Wallace* v. *Great*

*Western Power Co., supra, Bolar* v. *Maxwell Hardware Co.*, 205 Cal. 396 [271 Pac. 97, 60 A. L. R. 429], *Studer* v. *Southern Pacific Co.*, 121 Cal. 400 [53 Pac. 942, 66 Am. St. Rep. 39], and *Whalen* v. *Streshley*, 205 Cal. 78 [269 Pac. 928, 60 A. L. R. 445]. ▮▮▮ In view of the admitted facts of this case, showing full knowledge on the part of the injured girl of the risks she was assuming in occupying an unscreened seat in the section of the grand stand along the first-base line, there can be no ground for holding that the trial court in the present case abused its discretion in refusing to submit the issue of contributory negligence to the jury.''

The respondent Suhr has made a motion to affirm the judgment. For the reasons above stated it is unnecessary to consider the motion separately.

The judgment is affirmed.

Rehearing denied.