[No. B018119. Second Dist., Div. Two. Sept. 5, 1986.]

SHIRLEY NEINSTEIN, Plaintiff and Appellant, v.
LOS ANGELES DODGERS, INC., Defendant and Respondent.

**COUNSEL**

Charles J. Fleishman for Plaintiff and Appellant.

Shelden, Kulchin & Klein, Aaron E. Shelden and Barry G. Florence for Defendant and Respondent.

**OPINION**

COMPTON, J.—Plaintiff Shirley Neinstein attended a baseball game at Dodger Stadium. She occupied a seat on the first base side in an unscreened area. During the course of the game she was struck by a batted ball. She subsequently instituted this personal injury action,[1] alleging that defendant was negligent in failing to protect her against such an occurrence. The trial court granted defendant's motion for summary judgment. This appeal follows. We affirm.

■ The rules governing adjudication of a motion for summary judgment are well known. In making its determination, the trial court may rely on "affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken" (Code Civ. Proc., § 437c), and may also draw reasonable inferences from the facts before it. (*Michael R.* v. *Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1065 [205 Cal.Rptr. 312].) ■ All reasonable inferences are drawn in favor of the party opposing the summary judgment (*Rubio* v. *Swiridoff* (1985) 165 Cal.App.3d 400, 403 [211 Cal.Rptr. 338]); however, that party has the burden of showing that triable issues of fact exist. (*Osmond* v. *EWAP, Inc.* (1984) 153 Cal.App.3d 842, 850 [200 Cal.Rptr. 674].) ■ Where no triable issues of fact are presented, and the sole remaining question is one of law, it may appropriately be determined on a motion for summary judgment. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 589 [177 Cal.Rptr. 268].)

Inasmuch as this case reaches this court on appeal from a summary judgment in favor of the defendant, it is only necessary for us to determine whether there is any possibility that plaintiff may be able to establish her case. (*Osmond* v. *EWAP, Inc., supra,* at p. 850.) ■ Furthermore, a motion for summary judgment is addressed to the sound discretion of the trial court. In the absence of a clear showing of abuse of discretion, the judgment will not be disturbed on appeal. (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc., supra,* at p. 589.)

The evidence before the court at the time it ruled on defendant's motion revealed the following:

---

[1]Plaintiff alleged that as a result of being struck by the foul ball she developed breast cancer.

Plaintiff and her husband had occupied the identical seats on a previous occasion, thus she knew before entering the stadium that her seat was located in an unprotected area. Plaintiff did not request a seat in a protected area of the ballpark. During the first inning of the game a foul ball struck and injured her. She received treatment at the ballpark's first aid station and returned to her seat until she left the stadium.

Plaintiff, a self-described "ardent Dodger rooter," had been following the team since she attended a game at Ebbets Field when the baseball club was still the Brooklyn Dodgers. In addition to her previous visits to major league games, she had watched baseball on television since 1958. Moreover, plaintiff attended her two sons' "little league" games and had seen home movies of every game in which they played. In her deposition, plaintiff admitted that she had witnessed baseballs hit into the stands and was "generally familiar" with the game; however, in a subsequent declaration she denied that she "understood the game of baseball" and the danger to which spectators are subject.

Dodger Stadium is a multi-level facility which seats 56,000 patrons. Since its opening in 1962, a protective screen which measures 75 feet by 25 feet has been in place behind home plate. This screen protects approximately 2,000 field seats and an additional 1,000 loge seats.[2] Additionally, of the 53,000 unscreened seats, there are approximately 20,000 seats on the reserved level and 6,000 seats in the right and left field pavilions where the chances of being struck by a batted or thrown ball are extremely remote.

In their declarations, two veteran Dodgers' employees in charge of ticket sales stated that, as far as they were aware, no spectator had ever requested seats in the screened area for reasons of protection. They further declared that if a patron were to request a seat in a protected area, every effort would be made to accommodate them.

The backside of each ticket issued by the Dodgers reads: "The holder assumes all risk and danger incidental to the Game of Baseball, whether occurring prior to, during, or subsequent to, the actual playing of the game, including specifically (but not exclusively) the danger of being injured by thrown bats and thrown or batted balls, and agrees that the Participating Clubs, their Agents and Players, are not liable for injuries resulting from such causes."

We think it appropriate at this juncture to narrow the focus of this case by stating what is *not* at issue. Plaintiff makes no contention that any liability

---

[2]The Dodgers have no information as to how many of the screened seats were left unsold for the game at which plaintiff was injured.

on the part of the Dodgers rests on the notion that the particular player who hit the ball was negligent in so doing.

Nor does our review involve us in the Dodgers' duty to provide a premises free from the myriad of hazards which may exist in any large multi-level structure or which inheres in the conduct of any of the various activities which go on there besides the play of the game itself.

The simple issue here is whether the owner of a baseball stadium has a duty to protect spectators from the natural hazards generated by the way in which the game itself is played. In determining whether an individual, such as plaintiff, should be compensated for his or her injury and in crafting a rule which would permit or reject such compensation there is a group of persons other than the immediate parties whose interests are worthy of consideration. Those are the literally millions of persons who attend baseball games all over the country.

The quality of a spectator's experience in witnessing a baseball game depends on his or her proximity to the field of play and the clarity of the view, not to mention the price of the ticket.

As we see it, to permit plaintiff to recover under the circumstances here would force baseball stadium owners to do one of two things: place all spectator areas behind a protective screen thereby reducing the quality of everyone's view, and since players are often able to reach into the spectator area to catch foul balls, changing the very nature of the game itself; or continue the status quo and increase the price of tickets to cover the cost of compensating injured persons with the attendant result that persons of meager means might be "priced out" of enjoying the great American pastime.

To us, neither alternative is acceptable. In our opinion it is not the role of the courts to effect a wholesale remodeling of a revered American institution through application of the tort law.

■ In the seminal case of *Quinn* v. *Recreation Park Assn.* (1935) 3 Cal.2d 725 [46 P.2d 144], the California Supreme Court attempted to accommodate the competing interests by stating: "'With respect to the law governing cases of this kind, it has been generally held that one of the natural risks assumed by spectators attending professional games is that of being struck by batted or thrown balls; that the management is not required, nor does it undertake to insure patrons against injury from such source. All that is required is the exercise of ordinary care to protect patrons against such injuries [citation], and in doing so the management is not obliged to screen all seats, because . . . many patrons prefer to sit where their view

is not obscured by a screen. Moreover, the management is not required to provide screened seats for all who may apply for them. The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion [citations]; and if . . . a spectator chooses to occupy an unscreened seat . . . [*or is*] *unable to secure a screened seat* and consequently occupies one that is not protected, he assumes the risk of being struck by thrown or batted balls; and if injured thereby is precluded from recovering damages therefor.'" (*Id.*, at p. 729.) (Italics added.)

Were we deciding this issue without the precedent of *Quinn* v. *Recreation Park Assn.*, *supra*, 3 Cal.2d 725, we would not be persuaded that there is a need to impose a duty to provide *any* screened seats. A person who fears injury always has the option of refraining from attending a baseball game or of sitting in a part of the park which is out of reach of balls traveling with sufficient velocity to cause harm.

In any event, the duty seems to be one of little practical value. The injured person is always going to be one who is seated in an unscreened area and, who, according to *Quinn*, would be precluded from recovering regardless of the reason why he or she elected to sit there.[3]

On appeal plaintiff contends, however, that with the adoption of comparative fault in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], the defense of assumption of the risk is no longer viable, and the holding of *Quinn* therefore abrogated. Relying heavily on *Rudnick* v. *Golden West Broadcasters* (1984) 156 Cal.App.3d 793 [202 Cal.Rptr. 900], she further argues that even if *Quinn* is still the law, in the instant case there remain questions of fact which should have been submitted to a jury: to wit, the adequacy of the number of screened seats available.

■ "The *sine qua non* of any negligence action is, of course, the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member. [Citations.] Although the determination of duty is primarily a question of law, its existence may frequently rest upon the foreseeability of the risk of harm. [Citations.] Foreseeability may be decided as a question of law only if, under the undisputed facts, there is no room for a reasonable difference of opinion. [Citation.]" (*Gregorian* v. *National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 948 [220 Cal.Rptr. 302].)

---

[3]Of course, if a person is seated behind a screen and relying on it for protection, a ball penetrating the screen and causing injury would present an entirely different issue.

In *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, the Supreme Court abrogated the all-or-nothing approach to the defense of contributory negligence and substituted therefore a system of comparative negligence, opining that notions of fairness require a system which assesses liability in proportion to fault. *(Id.,* at pp. 810-813.) It was within this context that the court addressed the viability of the doctrine of assumption of risk declaring that insofar as the concept of assumption of risk partakes of the concept of contributory negligence it was abolished. ■ In those situations in which a plaintiff acts unreasonably in taking a specific risk, the claim is merged into the system of assessing liability according to fault.

On the other hand, where the plaintiff's conduct amounts to a release of the defendant's obligation of reasonable conduct, the assumption of risk doctrine continues to operate. As Dean Prosser explains "[W]here the plaintiff voluntarily enters into some relation with the defendant, with knowledge that the defendant will not protect him against one or more future risks that may arise from the relation . . . [h]e may then be regarded as tacitly or *impliedly* consenting to the negligence, and agreeing to take his own chances." (Prosser & Keeton, Torts (5th ed. 1984) § 68, p. 481.) For instance, Prosser illustrates that a spectator "may enter a baseball park, sit in an unscreened seat, and so consent that the players may proceed with the game without taking any precautions to protect him from being hit by the ball. . . . [T]he legal result is that the defendant is simply relieved of the duty which would otherwise exist."

■ In *Rudnick* v. *Golden West Broadcasters, supra,* 156 Cal.App.3d at p. 797, the court stated "'[W]hen the plaintiff has *reasonably* assumed a risk (e.g., sat in a baseball stadium in an area without protective screening), his conduct will not be considered as "fault" under comparative negligence. Rather, the court will decide whether the defendant breached a "duty" to the plaintiff. In the baseball case, the question would be whether defendant discharged his duty by providing some protective screening and warning of the risks involved.'" *(Rudnick* v. *Golden West Broadcasters, supra,* 156 Cal.App.3d 793, 797, citing Schwartz, Comparative Negligence (1975 special Cal. supp.) § 2(D), p. 4; italics in original.)

While the court there felt compelled to allude to the "duty" of providing a limited number of screened seats, a duty, the breach of which, even under *Quinn,* appears to lack any causal nexus with plaintiff's injuries, it was noteworthy that the court was of the opinion that plaintiff's conduct did not constitute "fault" and thus could not be "compared" to anything. We agree. It is neither negligent nor blameworthy to attend a ball game and sit in a "good seat" in the unscreened area.

In short the doctrine of comparative fault is not applicable under these circumstances, notwithstanding some abstract duty on the part of the stadium owner to provide a number of screened seats to accommodate persons who might ask for them.

Other jurisdictions, after the adoption of comparative fault, have continued to follow the *Quinn* rationale. (See *Akins* v. *Glen Falls City School Dist.* (1981) 53 N.Y.2d 325 [424 N.E.2d 531, 533].) ■ In the *Akins* case, the court detailed the widely recognized principle that an owner of a baseball field is not an insurer of the safety of its spectators. The court further pointed out that the perils of the game are not so imminent that due care on the part of the owner requires that the entire playing field be screened. The court took note of the fact that many spectators prefer to sit where their view is unobstructed by fences or protective netting and the proprietor of a ballpark has a legitimate interest in catering to those desires.

In the instant case, plaintiff *impliedly consented* to take her own chances that she would not be injured. She voluntarily elected to sit in a seat which was clearly unprotected by any form of screening. Rather than request a seat in a section where injury was unlikely to occur, plaintiff chose to accept a *highly sought after seat,* close to the sphere of action, where the likelihood of foul balls entering the stands remained a possibility. She was sufficiently warned of the risk by common knowledge of the nature of the sport and by the warning provided on the back of her ticket. The Dodgers were under no duty to do anything further to protect her from that hazard.

No question of fact remained for a jury's consideration.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.