974 F.2d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MERCEDES-BENZ OF NORTH AMERICA, INC.,
Plaintiff-counter-defendant/Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY CO., Defendant-counter-claimant/Appellee,
MERCEDES-BENZ OF NORTH AMERICA, INC.,
Plaintiff-counter-defendant/Appellee,
v.
HARTFORD ACCIDENT & INDEMNITY CO.,
Defendant-counter-claimant/Appellant.
 Nos. 89-56011, 89-56012.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1991.
Decided Aug. 24, 1992.
 
 Appeal from the United States District Court for the Central District of California, Nos. CV-86-2371-AWT; CV-86-2371-AWT; A. Wallace Tashima, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 MEMORANDUM*
 Before GOODWIN, PREGERSON and ALARCON, Circuit Judges.
 
 ORDER
 
 1
 The memorandum filed June 2, 1992 is ordered WITHDRAWN.
 
 
 2
 Mercedes Benz of North America ("Mercedes") and Hartford Accident and Indemnity Company ("Hartford") both appeal the judgment following a jury trial. The dispute concerns employee thefts which Mercedes had experienced, and the fidelity insurance bond (the "Bond") Mercedes had taken out with Hartford. We affirm in part, reverse in part, and remand.
 
 
 3
 On December 17, 1979, Calvin Rau, the manager of one of Mercedes' parts plants, wrote a memorandum (the "Alford Memorandum") concerning a possible theft by Monroe Alford, a Mercedes employee. Mercedes took no action at that time, however. In late 1982, police arrested a number of Mercedes employees, including Alford, for theft of parts belonging to the company. On November 2, Mercedes notified Hartford of the arrests and of Mercedes' losses resulting from the thefts. In 1983, the Mercedes employees were tried and convicted of theft. In December, after the conclusion of the trial, Mercedes submitted its proof of loss to Hartford pursuant to the Bond.
 
 
 4
 In April, 1986, after much discussion between the parties, Hartford filed an action for declaratory relief in state court in New Jersey. Hartford was seeking a declaration that New Jersey law would apply to its dispute with Mercedes. Two weeks later, Mercedes responded by filing this action against Hartford in federal district court in California. Mercedes alleged breach of contract, breach of the implied covenant of good faith and fair dealing ("ICGFFD"), and violations of the California Insurance Code § 790.03(h). Hartford counterclaimed, alleging, inter alia, breach of contract, breach of the ICGFFD, fraudulent concealment, and intentional misrepresentation. The jury returned verdicts in favor of each party of some of their counts. The jury found Hartford liable to Mercedes for $100,000 in contract damages and found Mercedes liable to Hartford for $5,000 in compensatory damages and $4.5 million in punitive damages. Hartford accepted a remittitur reducing the damages awarded to it to $505,000. Both parties appealed.
 
 
 5
 I. The Seminal Issue: Mercedes' 1979 "Discovery"
 
 
 6
 The central issue in this case concerns the Alford Memorandum. Mercedes' fidelity insurance bond with Hartford provided that the Bond would be deemed cancelled as to any employee "immediately upon discovery by the insured or by any partner or officer thereof not in collusion with such Employee of any fraudulent or dishonest act on the part of such Employee." The district court granted Hartford's motion for summary judgment on the issue of whether this cancellation provision was triggered by the Alford Memorandum of December 17, 1979. In other words, the court decided that there was no material question of fact whether Mercedes, through Rau, had discovered a dishonest act by Alford in 1979. Because summary judgment was in error, we remand this issue for decision by jury.
 
 
 7
 Mercedes first argues that the district court erred because Alford's dishonesty, if any, was not discovered by the insured, Mercedes, because Rau is neither the "insured" nor a "partner or officer" of the insured. The interpretation Mercedes seeks is unreasonably narrow. In 1979, Rau was the branch manager of the Mercedes plant at which the Alford incident occurred. Branch managers are agents of the corporation. Corporations cannot act aside from their agents and knowledge of an agent is ordinarily imputed to the principal. Accordingly, Rau served as the "insured" for the purposes of the cancellation clause. Ritchie Grocer Co. v. Aetna Casualty & Surety Co., 426 F.2d 499, 500 (8th Cir.1970).
 
 
 8
 Mercedes' second assertion of error is stronger: the district court should have let the jury decide whether Rau had "discovered" dishonesty by Alford in 1979. The court took over a jury's function to decide that the relevant facts "would inform the ordinary, reasonable and sensible employer that dishonesty has occurred which might involve the surety in liability." City Loan & Sav. Co. v. Employers' Liab. Assurance Corp., Ltd., 249 F.Supp. 633, 658 (N.D.Ohio 1964), aff'd, 356 F.2d 941 (6th Cir.1966). The court applied the correct legal standard. Pacific-Southern Mortg. Trust Co. v. Insurance Co. of N.A., 166 Cal.App.3d 703 (1985). Pacific-Southern explicitly relied on City Loan. Id. at 710. The correct legal standard should have been given to the jury so it could draw the necessary inferences.
 
 
 9
 The relevant facts--which are all contained in the Alford Memorandum--are not in dispute. According to the memorandum, Rau observed Alford one day entering the men's room carrying a box. Later in the day, Rau discovered a box of parts hidden in the men's room supply closet and at 4:00 p.m., the box was still there. At 4:20 p.m., Alford left the plant and shortly thereafter, Rau checked the closet and discovered that the box was gone. When Alford next returned to work, Rau confronted him about the box. Alford told Rau that he had taken a box of janitorial supplies into the men's room but denied any knowledge of the box of parts. Summary judgment was appropriate only if there was no material dispute that these facts would have "inform[ed] the ordinary, reasonable and sensible employer that dishonesty ha[d] occurred." City Loan, 249 F.Supp. at 658.
 
 
 10
 Ordinarily, issues which involve a reasonableness standard should be determined by the jury. "The function of the trial court in passing on a summary judgment motion is not to determine an issue of fact (i.e. reasonableness), but to determine whether an issue of fact does, in fact, exist." Rudnick v. Golden West Broadcasters, 156 Cal.App.3d 793, 804 (1984) (Trotter, J., concurring) (citing Church v. Arko, 75 Cal.App.3d 291, 295 (1977)). This is not to say that summary judgment is never appropriate in cases involving a reasonableness standard. However, the facts which support a motion for summary judgment in such a case must be of a degree of clarity that leaves slight possibility that another answer would be reasonable. In First Sec. Sav. v. Kansas Bankers Sur. Co., 849 F.2d 345 (8th Cir.1988), the district court had granted summary judgment on the issue of whether an insured had "discovered" dishonesty. In that case, however, "in essence there was an admission by [the insured] that conclusively resolved the alleged disputed issue." Id. at 350. In this case, by contrast, there is only the Alford Memorandum--a document which reveals two possible views of what might be reasonable. The undisputed facts supported suspicion, or solid information of dishonesty, depending on one's view of the reasonable reader.
 
 
 11
 It is instructive to note in granting summary judgment the court flatly stated that inferences could be drawn "either way" from the Alford Memorandum. At that point the court should have concluded that summary judgment was inappropriate.
 
 
 12
 On remand, the jury should determine whether, through the Alford Memorandum, Mercedes had discovered an act of dishonestly by employee Alford in December, 1979. Because this issue is the central issue in the case, the jury's finding will affect every claim and counterclaim in this action for which post-December 1979 events are relevant. Each of these claims, therefore, must be retried. Moreover, we do not reach the evidentiary or fact-based arguments of the parties. The remainder of this disposition will rule only on those issues of law raised by the parties which might reappear on remand.
 
 II. Mercedes' Claims
 A. Contractual Time Limitation
 
 13
 Hartford argues that Mercedes' claims against Hartford are barred by the Bond's time limitation clause. That clause provides that "[n]o action shall lie against [Hartford] ... unless commenced within two years from the date when the Insured discovers the loss." Hartford brought this clause to the attention of the district court only after many years of discussions with Mercedes and at the close of a two-month trial. Even assuming Hartford prevails on the "discovery" issue on remand, Hartford has waived its right to press the time limitation clause. See Prudential-LMI Com. Insurance v. Superior Court, 51 Cal.3d 674, 689 (1990).
 
 B. Breach of Contract
 
 14
 At trial, the district court directed a verdict in favor of Hartford on the question of whether Mercedes could recover under the Bond for post-1979 losses. The court justified this decision in part on a finding that Mercedes bore the burden of proving its post-1979 losses. Contrary to Mercedes' protestations, this finding was correct. Executive Aviation, Inc. v. National Ins. Underwriters, 16 Cal.App.3d 799, 806 (1971) ("[T]he insured ha[s] the burden of proving the contract of insurance and its terms, as well as the loss.").
 
 
 15
 With regard to Mercedes' pre-December 1979 losses, the jury awarded Mercedes $100,000 in damages. This award was not affected by the district court's grant of summary judgment on the "discovery" issue. Moreover, because substantial evidence supported this award, Hartford's claim that the award was based on speculation is without merit. Accordingly, we do not disturb this jury award to Mercedes.
 
 C. Punitive Damages
 
 16
 Because the district court based its dismissal of Mercedes' punitive damages claim on its grant of summary judgment on the "discovery" issue, the district court must reconsider on remand its basis for rejecting this claim. We express no opinion on the availability of punitive damages.
 
 III. Hartford's Claims
 A. Breach of Contract
 
 17
 Mercedes argues that it was error for the court to submit Hartford's breach of contract claim to the jury. Mercedes is correct. Hartford's breach of contract claim concerned the cooperation clause of Hartford's fidelity bond with Mercedes. Mercedes argues that this clause was only a condition precedent, and not a promise. Hartford argues that it is both. Hartford's argument is belied by the language it chose itself in drafting the bond. The cooperation clause is contained in a section entitled "The foregoing insuring agreement and general agreements are subject to the following conditions and limitations." Within the cooperation clause, the following language leaves no doubt as to its purpose: "No action shall lie against [Hartford] unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Bond...."
 
 
 18
 While Hartford correctly notes that a clause can act simultaneously as both a condition and as a promise, Hartford can cite no case in which a court construed a cooperation clause as creating a cause of action for damages by an insurance company against its insured. Hartford gives no reason why the language in its bond does not mean what it says. Accordingly, on remand, the district court will not submit Hartford's contract damages claim to the jury.
 
 B. Breach of the ICGFFD
 
 19
 Mercedes argues that the court erred by allowing Hartford to recover compensatory damages on its breach of the ICGFFD claim. This argument is correct. In California Fair Plan Ass'n v. Politi, 220 Cal.App.3d 1612, 1618 (1990), the California Court of Appeal held that "[a]n action by an insurer against its insured for breach of the covenant of good faith and fair dealing only sounds in contract and, thus, any recovery must be limited to contract damages." The reasoning of Politi controls this case. On remand, the court should not allow Hartford to recover compensatory damages on its breach of the ICGFFD claim.
 
 
 20
 In addition, Politi bars attorneys' fees for this claim. 220 Cal.App.3d at 1618-19. The district court's denial of these fees was proper.
 
 
 21
 C. Fraudulent Concealment and Punitive Damages
 
 
 22
 Because Hartford cannot recover tort damages for its breach of the ICGFFD claim, its claim for punitive damages can be based only on its fraudulent concealment claim. As with all of the claims in this action, this latter claim depends heavily on the jury's finding on the "discovery" issue. Accordingly, we do not reach issues raised by the parties concerning this claim, or Hartford's punitive damages claim.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3