[No. E017721. Fourth Dist., Div. Two. July 1, 1997.]

JOHN LOWE, Plaintiff and Appellant, v.
CALIFORNIA LEAGUE OF PROFESSIONAL BASEBALL et al.,
Defendants and Respondents.

**COUNSEL**

Marjorie A. Seapy for Plaintiff and Appellant.

Roberts & Morgan and Arthur K. Cunningham for Defendants and Respondents.

## OPINION

McDANIEL, J.*—John Lowe (Plaintiff) was seriously injured when struck on the left side of his face by a foul ball while attending a professional baseball game. The game was being played at "The Epicenter," home field of the Rancho Cucamonga Quakes, Class "A," minor league baseball team.

The Quakes, at their home games, feature a mascot who goes by the name of "Tremor." He is a caricature of a dinosaur, standing seven feet tall with a tail which protrudes out from the costume. Tremor was performing his antics in the stands just along the left field foul line. Tremor was behind plaintiff and had been touching him with his (Tremor's) tail. Plaintiff was thereby distracted and turned toward Tremor. In the next moment, just as plaintiff returned his attention to the playing field, he was struck by a foul ball before he could react to it.

Very serious injuries resulted from the impact. As a result, the underlying action was commenced against the California League of Professional Baseball and Valley Baseball Club, Inc., which does business as the Quakes (defendants). The case was resolved in the trial court by summary judgment entered in favor of defendants.

Defendants were able to persuade the trial court, under the doctrine of primary assumption of the risk (*Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]), that defendants owed no duty to plaintiff, as a spectator, to protect him from foul balls. Such rationalization was faulty. Under *Knight*, defendants had a duty *not to increase* the inherent risks to which spectators at professional baseball games are regularly exposed and which they assume. As a result, a triable issue of fact remained, namely whether the Quakes' mascot cavorting in the stands and distracting plaintiff's attention, *while the game was in progress*, constituted a breach of that duty, i.e., constituted negligence in the form of increasing the inherent risk to plaintiff of being struck by a foul ball.

Thus, the trial court improperly granted the motion for summary judgment and it must be reversed accordingly.

### SYNOPSIS OF TRIAL COURT PROCEEDINGS

In the action, filed after his injury, plaintiff's complaint was styled in a single count, a refreshing example of clear and concise pleading. The key

---

*Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

charging allegations were contained in two paragraphs: "5. On said date and some time after the stated time and after the seventh inning, 'Tremor' the Quake's mascot, came up into the stadium in the area where plaintiff and his group were seated. Tremor was accompanied by an usher as he performed antics and entertained the crowd. Tremor is a person who wears a dinosaur costume with a long protruding tail. As John Lowe sat in his assigned seat, he was facing forward and looking toward the playing field when suddenly, and without warning or his consent, his right shoulder was touched by the tail of Tremor's costume. As he turned to his right to see who, or what, was touching him, baseball play had resumed and a batted ball, believed to be a foul ball, hit the plaintiff on the left side of his face breaking multiple facial bones. [¶] 6. The Left Terrace Section, where the plaintiff was seated with his group, is located northwesterly of the left field foul ball territory, and in the direct line of foul balls passing west of the third base line. Tremor's antics and interference, while the baseball game was in play, prevented the plaintiff from being able to protect himself from any batted ball and foreseeably increased the risks to John Lowe over and above those inherent in the sport."

After an unsuccessful demurrer, defendants noticed a motion for summary judgment.[1]

The notice contained no recitation of the grounds for the motion. However, as required by statute, defendants filed a separate statement of undisputed facts. Without the accompanying tabulation here of evidence for such statement of facts, they included: "1. On July 26, 1994, at approximately 7:05 p.m., plaintiff was in attendance at a baseball game between the Rancho Cucamonga Quakes and the San Bernardino Spirit at the Epicenter baseball facility and was seated in an area of the left terrace. [¶] 2. Plaintiff was struck by a foul ball by the Quakes mascot, Tremor [sic], who was entertaining in the area where plaintiff was seated. [¶] 3. The plaintiff had been to the Epicenter on at least two previous occasions. [¶] . . . [¶] 7. Plaintiff Lowe had witnessed foul balls being hit into the stands on many occasions. [¶] 8. Plaintiff Lowe had personally witnessed at least one fan being struck by a foul ball. [¶] 9. Plaintiff Lowe did not request a protected seat. [¶] 10. The Epicenter did have protected seats. . . . [¶] 11. Many of the teams in the California League of Professional Baseball have mascots. [¶] 12. The mascots have become an intrical [sic] part of the game. . . . [¶] 14. The Epicenter stadium has approximately 2500 seats which are protected by screens."

---

[1]The record on appeal does not contain a copy of an answer to the complaint; however, we assume that an answer was filed. It would not have been possible to move for summary judgment unless the case were at issue.

As evidentiary support for their motion, defendants filed the declaration of Joseph M. Gagliardi, president of the California League of Professional Baseball. Such declaration pointed out that seven of the ten teams in the California League have mascots. Among other things, the Gagliardi declaration stated, "[m]ost of the mascots have taken on a specific caricature such as Disney/Warner Brothers animations for each team. They are personable in their duties and responsibilities and try to make as much contact with the public to keep fan interest active. Fans have become accustomed to having the mascots entertain them. The mascots perform their routines nightly on the playing field and in the public seating area. [¶] While the clubs encourage the mascots' interaction, especially with the young children so that they are comfortable at a ballpark game situation, the mascots' activities include keeping the fans informed, generating fan participation in promotions/advertisements, and helping with crowd control. Greeting the customer is an essential part of the ball club's public relations efforts." Defendants also filed extended excerpts of plaintiff's deposition, supported by the authenticating declaration of James L. Price, counsel for plaintiff. These deposition excerpts provide an insight into how plaintiff was injured:

"Q . . . Where was the mascot at the time that the foul ball was hit?

"A Directly behind me.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Q How long had the mascot been directly behind you at the time you were hit?

"A I would say probably two minutes.

"Q Was the mascot standing in the same place for that long?

"A He was moving around back and forth. But whatever he was doing, he was doing it directly behind my seat.

"Q So he was at the row or in the row behind your row?

"A Our row of seats backed up to an aisle. He was standing in the aisle directly behind my seat.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Q And at the time that you were hit, the mascot was standing behind your row of seats in the aisle?

"A Yes.

"Q Did any part of the mascot's costume or person touch you before you were hit?

"A Yes.

"Q And what or how were you touched by this mascot?

"A With his tail.

"Q When did that occur in relationship to when you were hit by the ball?

"A Well, during that approximate two-minute span he was doing his act. And I felt this bam, bam, bam, on the back of my head and shoulders, and I turned around to see what he was doing. . . .

"Q You felt something on your shoulders?

"A Right.

"Q How do you know it was the tail that tapped you on the shoulder?

"A I turned around and looked.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q And when you turned around and looked, what did you see?

"A Well, I noticed that he was doing his antics to the crowd that was in the immediate area. And I saw that as he was turning his body, his tail was hitting me.

"Q Is that something that you actually saw or is that something that you assumed that the tail was hitting you?

"A No, I saw the tail.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"I could see the stump of the tail hitting me. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q All right. Were you annoyed by the mascot's tail tapping you on the shoulder?

"A Initially, no, but as it continued, it was a little bothersome.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q Where were you looking at the moment the ball was hit?

"A I had just turned my head towards the field as the ball arrived.

"Q And in terms of timing, was it almost instantaneous that you turned your head to the field and got hit?

"A Yes.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Q Where were you looking immediately before you turned your head toward the field?

"A Up at Tremor.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Q And at that time you were looking at Tremor immediately before turning your head back to the field and getting hit, was the reason that you were looking at Tremor that his tail had just tapped you on the shoulder again and you turned around and looked?

"A Yes.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Q Were you eating or drinking anything at that time?

"A I was not eating anything, there was no drink in my hand. . . ."

Plaintiff filed opposition to the motion for summary judgment. Such opposition included a response to defendants' undisputed statement of facts. As to defendants' statement No. 2, namely that "plaintiff was struck by a foul ball by the Quakes mascot, Tremor, who was entertaining in the area where plaintiff was seated," plaintiff disputed it. In direct response, plaintiff declared, "[p]laintiff's complaint is mis-stated [*sic*]. Plaintiff was touched by the mascot, Tremor, without warning or consent, after baseball play resumed. Plaintiff was hit in the face by a foul ball as he turned to see who or what was touching him in the area of his right shoulder. As he turned his

head back, a batted baseball hit the left side of the plaintiff's face breaking multiple facial bones. Paragraph five of plaintiff's complaint."

As to defendants' statement No. 12, namely that "[t]he mascots have become an intrical [*sic*] part of the game (per declaration of Joseph Gagliardi)," plaintiff disputed it. In direct response, plaintiff declared, "[t]he statement of Joe Gagliardi is a conclusion of a non-expert. It is also unintelligible since there is no such word as 'intrical' in Webster's Abriged [*sic*] Dictionary. According to the Press Enterprise article page 2, EXHIBIT 'D[,'] mascots are needed to make money . . . but are not essential to the baseball game. Admission number 4, Mr. Lowe's Request For Admissions, Set One, both defendants admit the game can be played without the mascot being there. []EXHIBIT 'E[.'] A mascot is a marketing tool, not an integral part of the game of baseball. []Deposition of Mark Monninger [Tremor] page 15, Lines 4 through 14. EXHIBIT 'F[.']"

Otherwise, plaintiff objected to the declaration of Joseph Gagliardi, particularly that " '[t]he mascots have become an intrical [*sic*] part of the game.' " The objection noted further that "[t]his is hearsay without any applicable exception. In addition, non-experts, such as Mr. Gagliardi, are required to state facts rather than conclusions, *Chatman* v. *Alameda County Flood Control* [*etc.*] *Dist*[.] (1986) 183 Cal. App. 3d 424, 228 Cal. Rptr. 257, 260. Plaintiff asks that Mr. Gagliardi's conclusions not be allowed into evidence. 2. Objection is made as to the [undated] article from the Riverside Press Enterprise newspaper. This is hearsay in that defendants are attempting to use this article to prove a matter here in dispute. This too is hearsay without any applicable exception. Plaintiff asks that the newspaper article not be allowed into evidence, or, in the alternative, that it not be accepted as proof of any disputed matter which is at issue."

In the points and authorities filed in opposition to the motion, it was stated that "[f]or a period of at least two minutes, Tremor whacked the back of Mr. Lowe's head; back and shoulder with the tail portion of the Tremor costume. Finally, after being touched repeatedly in an annoying and unprivileged manner, Mr. Lowe turned around and saw that he was indeed being touched at that moment by the tail of the Tremor costume. As Mr. Lowe turned his face back toward the field, he was not aware that the game had again resumed and he was hit in the face by a line drive foul ball. The foul ball fractured numerous facial bones and caused dental injuries."

Otherwise, the points and authorities observed, "[t]he California Supreme Court has stated (in the context of injuries to participants) that a defendant generally has no duty to eliminate, or protect a plaintiff from risks inherent

to the sport itself, but *has only a duty not to increase those risks*, Knight[,] supra[,] [*sic*] at pages 315 and 316. A mascot is not integral to the sport of baseball, as is required by Knight[,] supra[,] [*sic*]. The unsupported statement of Mr. Gagliardi is nothing more than a self-serving statement of a party defendant. What a mascot is, according to the deposition of Mark Monninger [Tremor] at page 14, lines 10 through 25, see EXHIBIT 'A' page number 1, is a marketing tool or simply entertainment. Mark Monninger states in his deposition that he was sick two days during the 1994 season. The baseball game went on without him there[,] page 15[,] lines 4 through 15. Defendants['] Admission number 4 is that the game can be played without Tremor being present. They further [a]dmit in Admission number 10 that Tremor could entertain without even going into the stands, EXHIBIT 'B[.'] If that safety practice had been in place during 1994, Mr. Lowe would not have been interfered with and injured by the foul ball."

Further, within the parameters of the motion for summary judgment, plaintiff pointed out that "defendants have not addressed the issues raised in paragraph Six of Mr. Lowe's Complaint." That paragraph, earlier quoted, alleged, "6. The Left Terrace Section, where the plaintiff was seated with his group, is located northwesterly of the left field foul ball territory, and in the direct line of foul balls passing west of the third base line. Tremor's antics and interference, while the baseball game was in play, prevented the plaintiff from being able to protect himself from any batted ball and foreseeably increased the risks to John Lowe over and above those inherent in the sport."

Defendants replied to plaintiff's opposition. Such reply contained no evidentiary filings; it consisted only of additional points and authorities. The thrust of the filings was to argue that mascots have long been an "integral" part of large publicly attended sporting events.

With these filings before it, the trial court entertained oral argument of defendants' motion. At the outset, the court announced its tentative ruling. "The Defendant's [*sic*] Motion for Summary Judgment is granted. There are no triable issues of material fact. Plaintiff's claim is barred by the doctrine of primary assumption of the risk. Where a spectator at a ball game has chosen not to sit in a screened area, that person assumes the risk of being hit by a foul ball. I think it falls within the case of *Neinstein* versus *Los Angeles Dodgers, Inc.*, [1986] located at 185 Cal.App.3d 176 [229 Cal.Rptr. 612]." Despite extended argument by counsel for plaintiff, the tentative order above noted became the final order of the court.

A minute order was issued which indicated that the motion was granted, there being "no triable issue of material facts." Thereafter, a written judgment of dismissal, reflecting the minute order, was signed and entered. It

recited that "[s]aid dismissal is premised upon the court's finding that there is no triable issue as to material fact, and that the moving parties are entitled to a judgment as a matter of law." This appeal followed.

## DISCUSSION

In pursuing his appeal, plaintiff, challenging to the propriety of the summary judgment, assigned as trial court error: (1) its improper application of the doctrine of the primary assumption of the risk; and (2) its reliance on a New York case, *Clapman* v. *City of New York* (1984) 63 N.Y.2d 669 [479 N.Y.S.2d 515, 468 N.E.2d 697].

In responding to the appeal, defendants rely on a collection of cases which are readily distinguishable on their facts from those facts in this record and hence, because they are wholly inapposite, require no further discussion or analysis.

We turn then to a consideration of the rationale relied on by plaintiff. In so doing, we are reminded that it is a summary judgment which is here for review. Such review is independent of that in the trial court but mirrors exactly the scenario followed there. (*Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674].) That scenario is guided by precise statutory prescriptions set forth in section 437c of the Code of Civil Procedure. Of key significance are subdivisions (o)(2) and (c).

Section 437c, subdivision (o)(2) of the Code of Civil Procedure provides in pertinent part, "[a] defendant . . . has met his or her burden of showing that [the plaintiff's] cause of action has no merit if that party has shown . . . that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to . . . . a defense thereto."

Section 437c, subdivision (c) of the Code of Civil Procedure provides that, "[t]he motion for summary judgment *shall be granted* if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider *all of the evidence set forth in the papers,* except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Italics added.)

■ Under this prescription, the first step is an analysis of the pleadings, i.e., the complaint and answer, including any affirmative defenses that may be contained therein. "The pleadings define the issues to be considered on a motion for summary judgment." (*Ferrari* v. *Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].)

The next step in the analysis calls for an evaluation of the moving defendant's effort to meet the burden of showing that plaintiff's cause of action has no merit or that there is a complete defense to it. This showing can also rely on filings by plaintiff in opposition. (*Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 743, 750-751 [41 Cal.Rptr.2d 719].) In any event, once a prima facie showing is made and hence that the "burden" has been met, it shifts to the plaintiff to show that a triable issue of material fact exists within the framework of that fixed by the pleadings. (Code Civ. Proc., § 437c, subd. (o)(2).)

Once the burden has shifted, it must next be determined if the filings in opposition succeeded in raising a triable issue of material fact. If they did, the motion must be denied; if they did not, the motion must be granted. (Code Civ. Proc., § 437c, subd. (c); *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].)

As earlier noted, our review precisely mirrors what occurs in the trial court, i.e., we make a de novo evaluation which, after it be shown that there are no disputed issues of material fact, requires a legal determination of the moving party's entitlement to judgment. (*Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768].)

In compliance with the foregoing, we turn to the first step in the system of analysis above fashioned, i.e., to define the issues framed by the pleadings. With regard to the record provided us, this step is somewhat difficult to perform. As earlier noted, there was no copy of defendants' answer contained in the clerk's transcript. However, we can extrapolate from other filings that all of the allegations describing the gravamen of plaintiff's grievance were denied. Such grievance can be found in paragraph 6 of the complaint as variously quoted above. In sum, those allegations pointed out that Tremor's antics in hitting plaintiff with its tail distracted plaintiff and "prevented plaintiff from being able to protect himself from any batted ball and foreseeably increased the risk to John Lowe over and above those inherent in the sport."

Otherwise, we assume that the answer introduced into the pleading mix the affirmative defense of the doctrine of primary assumption of the risk. We

assume such based on defendants' points and authorities found at page 72 of the clerk's transcript.

■ As a practical matter, it appears to us that paragraph 6 actually anticipated the possibility of defendants' urging the doctrine of the primary assumption of the risk; hence, we shall treat such conclusion as framing the dispositive issue of fact, namely whether the mascot's antics and their resulting distraction of the plaintiff operated to increase the inherent risks assumed by a spectator at a baseball game. In this regard, as plainly stated in *Knight*, ". . . it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (*Knight* v. *Jewett*, *supra*, 3 Cal.4th 296, 315-316.) The rule is no different in instances involving spectators.

The next step in the summary judgment analysis is to determine whether defendants' evidentiary filings in support of their motion were sufficient to provide the factual basis for making their affirmative defense available and thereby shifting the burden to plaintiff to demonstrate a triable issue of fact with reference thereto. (Code Civ. Proc., § 437c, subd. (o)(2).)

As indicated earlier in the opinion, as part of the synopsis of the trial court proceedings, the only evidentiary filings by defendants in support of their motion were: (1) the declaration of Joseph Gagliardi; (2) a copy of a clipping from the Riverside Press Enterprise about mascots; and (3) excerpts of plaintiff's deposition. As prescribed by *Knight*, the burden to be surmounted by such filings was to show that any risk to spectators caused by the antics of the mascot did not operate to increase those inherent risks to which spectators at baseball games are unavoidably exposed. In other words, the key inquiry here is whether the risk which led to plaintiff's injury involved some feature or aspect of the game which is inevitable or unavoidable in the actual playing of the game. In the first instance, foul balls hit into the spectators' area clearly create a risk of injury. If such foul balls were to be eliminated, it would be impossible to play the game. Thus, foul balls represent an inherent risk to spectators attending baseball games. Under *Knight*, such risk is assumed. Can the same thing be said about the antics of the mascot? We think not. Actually, the declaration of Mark Monninger, the person who dressed up as Tremor, recounted that there were occasional games played when he was not there. In view of this testimony, as a matter of law, we hold that the antics of the mascot are not an essential or integral part of the playing of a baseball game. In short, the game can be played in the absence of such antics. Moreover, whether such antics increased the inherent risk to plaintiff is an issue of fact to be resolved at trial.

Our view of the entire record leads to the conclusion that defendants offered nothing in the way of either relevant or competent evidence to

resolve prima facie the dispositive issue of fact above recited; thus they failed to shift to plaintiff the burden contemplated by section 437c, subdivision (o)(2) of the Code of Civil Procedure. In this posture, the trial court was presented with a circumstance illustrated by *Bashi* v. *Wodarz* (1996) 45 Cal.App.4th 1314 [53 Cal.Rptr.2d 635]. In that case, a summary judgment was reversed by the reviewing court. Relying on *Varni Bros. Corp.* v. *Wine World, Inc.* (1995) 35 Cal.App.4th 880 [41 Cal.Rptr.2d 740], the *Bashi* court stated, " '[w]here the evidence presented by defendant does not support judgment in [their] favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff.' " (45 Cal.App.4th at p. 1318.) That is what the record shows here. (See also *Parsons Manufacturing Corp.* v. *Superior Court* (1984) 156 Cal.App.3d 1151, 1157 [203 Cal.Rptr. 419].) In sum, because the burden never shifted to plaintiff requiring him to demonstrate a triable issue of material fact, it is unnecessary to pursue the analysis further.

Even so, we note further, under the holding in *Neinstein* v. *Los Angeles Dodgers* (1986) 185 Cal.App.3d 176 [229 Cal.Rptr. 612], *absent any distraction by the mascot,* that plaintiff could have assumed the risk. Justice Compton, writing in *Neinstein,* observed that the plaintiff "voluntarily elected to sit in a seat which was clearly unprotected by any form of screening. . . . She was sufficiently warned of the risk by common knowledge of the nature of the sport. . . . The Dodgers were under no duty to do anything further to protect her from the hazard." (*Id.* at p. 184.) However, in *Neinstein,* there was no mascot bothering the plaintiff and thus distracting her attention from the playing field. Thus, *Neinstein* is readily distinguishable.

The same can be said of the *Clapman* case decided by the Court of Appeals of New York. In that case, a spectator at Yankee Stadium was struck by a foul ball. He contended that a vendor moving in front of him obscured his view. As to this contention, the court said that "respondents had no duty to insure that vendors moving about the stadium did not interfere with Clapman's view." (*Clapman* v. *City of New York, supra,* 468 N.E.2d 697, 698.) That is not this case. In *Clapman,* the plaintiff at all times was facing the field of play. Here, plaintiff, because of the distraction, had turned away. This presents a substantially different set of facts, recognized at once by anyone who has ever attended a professional baseball game.

Based upon the foregoing analysis, we hold that the trial court improperly granted the motion for summary judgment.

## Disposition

The judgment is reversed with directions to the trial court to vacate its order of January 7, 1996, and to enter a new and different order denying defendants' motion for summary judgment.

Richli, Acting P. J., and Ward J., concurred.

Respondents' petition for review by the Supreme Court was denied September 17, 1997.