[No. B099824. Second Dist., Div. Four. July 21, 1997.]

WAYNE K. TULLY et al., Plaintiffs and Appellants, v.
WORLD SAVINGS & LOAN ASSOCIATION et al., Defendants and
Respondents.

**COUNSEL**

Arnold, Back, Mathews, Wojkowski & Zirbel and Brian J. Back for Plaintiffs and Appellants.

Rosenthal, Withem, Zeff & Nahmi, Michael L. Withem and Brent D. George for Defendants and Respondents.

**OPINION**

**VOGEL (C. S.), P. J.—**

### Introduction

Plaintiffs and appellants Wayne K. Tully and Cherie Tully appeal from a summary judgment entered in favor of defendants and respondents World

Savings and Loan Association (World) and Golden West Savings Association Service Co. (Golden West). The Tullys seek to set aside a nonjudicial foreclosure sale of their residence, based on the lender's alleged failure to comply with applicable statutory requirements and breach of a repayment agreement. We reverse. There are triable issues of fact material to the Tullys' claim that World was estopped to proceed with the sale. There is no merit, however, to the Tullys' claim that World was required to republish notice of sale following the lifting of an automatic bankruptcy stay.

*Facts*

On April 19, 1991, the Tullys borrowed $435,000 from World evidenced by a promissory note and secured by a first deed of trust on their residence on Topochico Drive, Woodland Hills, California. The trust deed designated World as the beneficiary, and Golden State was the substituted trustee. It was recorded on April 29, 1991, in Los Angeles County.

The Tullys defaulted on the loan in April of 1992. On July 27, 1992, World served and recorded a notice of default and election to sell pursuant to the terms of the deed of trust. On October 16, 1992, World informed the Tullys the amount due and owing on the loan, including all allowed fees and charges, was $27,555.11.

On October 23, 1992, Mr. Tully spoke with a World bank officer about a repayment plan to avoid the foreclosure sale of his home. On the same day he paid $20,000 by a cashier's check to World and received a receipt for that payment showing it was applied to the defaulted loan. Yvonne Jubilado, payment plan assistant for World, sent the Tullys a letter dated October 23, 1992, stating in part, "In order to bring your loan to a current status as quickly as possible, we have agreed to the payment plan outlined below." In summary, World's letter informs the Tullys to pay $20,000 on October 26, 1992, followed by additional monthly amounts on arrearages through May 15, 1993; all payments are nonrefundable; if all payments are made when due the loan will be reinstated; if any payments are late the agreement is canceled; and, there is no grace period and the foreclosure proceedings are only *postponed* during the term of the payment plan. The letter requested the Tullys to sign and return a copy of the letter to confirm the agreement.

The Tullys received this letter on October 25, 1992, but did not sign and return it because, according to Mr. Tully, it did not conform to his understanding of the agreement he made with World's bank officer on October 23, 1992. Mr. Tully claimed that his agreement with World's bank officer provided that if he paid $20,000 on the loan that day, the pending foreclosure proceedings would be terminated and the loan reinstated on the condition that the Tullys "continue their payments pursuant to the loan and

continue payments on the accrued late charges." After receiving the letter, Mr. Tully telephoned Ms. Jubilado and demanded the return of the $20,000. World refused to return the payment and proceeded with the foreclosure.

On April 1, 1993, World served and recorded a notice of trustee's sale setting the sale date for April 23, 1993. The notice of sale was published in the Los Angeles Daily News on April 2, 9, and 16, 1993. The Tullys filed a petition for voluntary bankruptcy in the Federal District Court, Central District of California, at 2:38 p.m. on April 16, 1993. The sale was orally continued six times. Thereafter, World obtained an order entered on November 12, 1993, relieving it from the automatic bankruptcy stay. On November 22, 1993, the foreclosure sale took place and a trustee's deed upon sale was recorded in favor of World on November 29, 1993.

The Tullys filed this action to set aside the trustee's deed, to quiet title, and for the recovery of monetary damages. Their first amended complaint alleges 18 causes of action, all based essentially on the following assertions: World (1) is equitably estopped to enforce the trustee's deed by not terminating the foreclosure proceedings even though it accepted and retained the Tullys' payment of $20,000 on October 23, 1992; (2) violated the automatic stay imposed by 11 United States Code section 362(a)(4) by publishing the last of the three Civil Code section 2924f, subdivision (b)(1) notices on April 16, 1993; (3) proceeded with the sale of the property without new notice of sale after obtaining relief from the bankruptcy stay; and (4) failed to provide homeowner counseling within 45 days of the Tullys' default on the loan pursuant to 12 United States Code section 1701x.

World filed an answer denying the allegations of the complaint and asserting various affirmative defenses. World filed a motion for summary judgment on all causes of action or alternatively for summary adjudication as to each cause of action. World's motion for summary judgment was granted by an order finding there are no triable issues of material fact concerning World's compliance with all applicable state and federal laws and ". . . World did not violate the agreement entered into between World Savings and Plaintiffs on or about October 23, 1992 because of the terms of the agreement that Plaintiffs claim were violated were never a part of the agreement and because Plaintiffs failed to perform their end of the agreement." The trial court based this finding on the letter dated October 23, 1992, sent by Ms. Jubilado to the Tullys, the declarations of Jolene Bailey and Mr. Tully, and the copy of the $20,000 canceled cashier's check.[1]

---

[1] The trial court denied the Tullys' cross-motion for summary judgment and summary adjudication of issues. These are not appealable orders.

*Summary Judgment Must Be Reversed Because There Are*
*Triable Issues of Fact as to World's Alleged Agreement to*
*Terminate the Pending Foreclosure*

It is undisputed that the Tullys paid $20,000 by cashier's check on October 23, 1992. Mr. Tully's declaration filed in opposition to World's motion for summary judgment states that, "On . . . October 23, 1992, I contacted World to secure an agreement to bring the Tully loan current. . . . An oral agreement and/or modification of the contract was entered into by me . . . and World by a bank officer . . . [that] [t]he Tullys would make payment in the amount of Twenty Thousand Dollars ($20,000) by a cashier's check before the close of the business day . . . [and] it was understood by World and the Tullys that the total principal and interest on the loan was current and . . . approximately One Hundred Twenty-Five Dollars and fifty-two cents ($125.52) was paid toward 'late charges.' " According to Mr. Tully's declaration the agreement included additional payments of $3,000 on November 15, 1992, $2,000 by December 15, 1992, and $4,345.98 by January 15, 1993, and monthly payments of $5,345.98 "until the loan was brought current." He declared that ". . . upon payment of the $20,000 the pending foreclosure proceedings would be deemed terminated and the Tully obligation would be reinstated, with the only two (2) conditions being that the Tullys continue their payments pursuant to the loan and continue payments on the accrued late charges."

"In extreme cases the beneficiary may be estopped to proceed with foreclosure if he accepts payments from the trustor without objection and the trustor is misled by the beneficiary into believing that the default has been cured and the foreclosure proceedings terminated." (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:140, p. 461.) Mr. Tully's fundamental contention is that he was led to believe that if he paid $20,000 on October 23, 1992, and agreed to a payment schedule, the foreclosure would be terminated.

World does not take the position that there was no agreement, only that the terms of the agreement are those set forth in Ms. Jubilado's October 23, 1992, letter. World's position is reiterated throughout its separate statement of undisputed facts: ". . . World did not violate the agreement entered into between World and Plaintiffs on or about October 23, 1992 because the terms of the agreement that Plaintiffs claim were violated were never a part of that agreement and because Plaintiffs failed to perform their end of the agreement." The only support World provides for that assertion are ". . . the terms of the October 23, 1992 agreement between WORLD's agent Yvonne Jubilado and the TULLYs is Yvonne Jubilado's letter dated that same day and sent to the TULLYs which was never signed and returned to World."

The Tullys specifically challenged that contention: "Disputed: Ms. Jubilado's letter of October 23, 1992 accurately reflects portions of the agreement between World and the Tullys but inaccurately and unilaterally states other terms which were never agreed to between World and the Tullys. The verified First Amended Complaint and the Declaration of Wayne K. Tully submitted in support of the Tully motion and the declarations submitted in opposition to the World motion are also evidence of the terms of the October 23, 1992 agreement between World and the Tullys. Additional items of evidence are the canceled cashier's check paid by the Tullys and the World receipt for funds which indicates thereon 'loan clearing' and 'application of funds foreclosure.' "

In short, World relies only on the unsigned October 23, 1992, letter as evidence of the terms of the loan repayment agreement. That evidence is directly contradicted by Mr. Tully's declaration that World agreed to terminate the foreclosure proceedings when he made the $20,000 payment by cashier's check on October 23, 1992, and the documentation of his payment on a receipt marked "loan clearing" and "application of funds foreclosure." Here there is a clear conflict in the evidence pertaining to a material issue raised by the complaint.

■ " 'The Supreme Court continues to admonish that summary judgment is a drastic remedy and should be used with caution. [Citation.] Because summary judgment is a drastic procedure all doubts as to the propriety of granting a motion for summary judgment should be resolved in favor of the party opposing the motion. [Citations.] The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory. [Citation.] In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed . . . . [Citations.] All reasonable inferences are drawn in favor of the party opposing the summary judgment. [Citation.] But evidence may be so lacking in probative value that it fails to raise any triable issue. To put the matter otherwise, the issue of fact becomes one of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion. [Citation.]' " (*Preach* v. *Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1450 [16 Cal.Rptr.2d 320].)

■ Although the October 23, 1992, letter supports World's version of the terms of the loan repayment plan, it amounts to no more than a recitation

of their employees' understanding of those terms. It fails to resolve the issue because it is directly contradicted by Mr. Tully's declaration.[2]

The same is true of the declaration of World's house counsel and vice-president, Jolene Bailey. She does not indicate she had any conversation or contact with the Tullys or either of them on October 23, 1992, or otherwise. The recitations of her declaration may be sufficient to authenticate the exhibits attached to it, but they are not in controversy in any event. What is missing is any foundation to qualify her as a percipient witness to any discussion between Mr. Tully and any representative of World. But even if she was competent to testify as to what was agreed to between Mr. Tully and World's bank officer, the issue would remain unresolved because Mr. Tully's declaration simply reduces the matter to a credibility contest. This issue is not susceptible to resolution by summary judgment or adjudication. "[T]he function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The trial court simply misapprehended its function and impermissibly decided a contested issue.

### Remaining Issues of Law

The existence of a triable issue of fact concerning the Tullys' estoppel theory requires reversal of the summary judgment in World's favor. For the guidance of the court on remand we address two remaining theories of the Tullys which are critical to determination of their case and which present pure questions of law involving statutory interpretation. (Code Civ. Proc., §§ 43, 906.) ▮ The Tullys contend that because they filed a petition in bankruptcy on April 16, 1993, the same day as the third published notice of trustee's sale, World was required, after obtaining relief from the automatic bankruptcy stay, either to begin anew the publication of notice required by Civil Code section 2924f, or in any event to give new, actual notice of the trustee's sale. There is no legal merit to these contentions.[3]

Civil Code section 2924f, subdivision (b)(1) provides in part that "before any sale of property can be made under the power of sale contained in any deed of trust . . . notice of the sale thereof shall be given by posting a written notice . . . at least 20 days before the date of sale in one public place

---

[2]No declaration was filed by Ms. Jubilado.

[3]We do not discuss the issue of whether World offered, or was required to offer, debtor counseling services pursuant to 12 United States Code section 1701x. This issue is factual. We also do not discuss entitlement to attorney fees, which would be premature before final determination following remand as to who prevails and upon what theory.

in the city where the property is to be sold . . . and publishing a copy once a week for three consecutive calendar weeks, the first publication to be at least 20 days before the date of sale, in a newspaper of general circulation . . . ." World complied by publishing notice of sale in the Daily News on April 2, 9, and 16, 1993. The Tullys contend that because they filed for chapter 13 bankruptcy on the afternoon of April 16, the automatic stay provision of 11 United States Code section 362(a)(4) invalidates the requisite notices of foreclosure sale.[4] Their contention is based on the provision of Civil Code section 2924f, subdivision (b)(1) which states, "The term 'newspaper of general circulation,' as used in this section, has the same meaning as defined in Article 1 (commencing with Section 6000) of Chapter 1 of Division 7 of Title 1 of the Government Code." Those provisions of the Government Code pertain to publishing and advertising of official and statutory notices. Government Code sections 6062 through 6066 define the term of publication to commence on the first day of the publication and terminate at the end of the last day of publication. For example, where publication of notice is for a period of three weeks, Government Code section 6063 provides, "[T]he period of notice commences upon the first day of publication and terminates at the end of the twenty-first day, including therein the first day." On this basis, the Tullys argue that the automatic bankruptcy stay prevented the completion of the notice of sale published on April 16, 1993.

We decline to embrace this intricate method of unraveling a lender's compliance with required foreclosure procedures, because it misapplies the underlying policy of the automatic bankruptcy stay. The United States Court of Appeals for the Ninth Circuit has held that where a duly noticed foreclosure sale has been continued by published notice of postponement of sale during operation of the stay, there is no violation of 11 United States Code section 362. ■ "The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions. [Citations.] The automatic stay also prevents piecemeal diminution of the debtor's estate. [Citation.] The automatic stay does not necessarily prevent all activity outside the bankruptcy forum. [Citation.] [¶] Here, the Bank merely maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision." (*Matter of Roach* (9th Cir. 1981) 660 F.2d 1316, 1318-1319.) It follows that the publishing of notice by coincidence on the same date the debtors filed a petition in bankruptcy does not upset the status quo and does not harass or interfere with the debtors or give any advantage to the lender. (See *Checkers Drive-In Restaurants* v. *Commissioner* (D.C.

---

[4] 11 United States Code section 362(a)(4) cited by the Tullys provides that the filing of the petition "operates as a stay . . . of [¶] . . . [¶] (4) any act to create, perfect, or enforce any lien against property of the estate."

Cir.1995) 51 F.3d 1078, 1082-1083 [311 App.D.C. 188].) As a matter of law, World's publication of notice of sale on April 16, 1993, was not invalidated by and did not violate the federal bankruptcy stay.

In reliance on a decision of the United States Bankruptcy Court, Central District of California, the Tullys next contend that World was required to republish the notice of sale with actual notice to the Tullys after obtaining relief from the bankruptcy stay and before proceeding with the foreclosure sale. *In re Tome* (Bankr. C.D. Cal. 1990) 113 B.R. 626 involved chapter 13 debtors who owned a residence encumbered by a loan secured by a deed of trust. Prior to the filing of the petition for bankruptcy, the loan was in default and the lender scheduled a foreclosure sale which was stayed pursuant to 11 United States Code section 362. Because of the stay the sale was postponed five times by announcement of the time and date and place. No other notice of postponement was ever given to the debtors. Thereafter the lender obtained a court order relieving it from the stay and it rescheduled the foreclosure sale. Just prior to the rescheduled sale, the lender sold its position to third persons who purchased the property at the sale for the credit bid of the total indebtedness plus $17,345. Before the sale the debtors found a new lender to refinance their home and contacted the lender who initiated the foreclosure to determine the balance due. They were told that the debt had been paid off. Later, they were told by the original lender their home had been sold at a foreclosure sale. The debtors had no prior notice of this sale. Against this backdrop the court concluded that the original lender had given false and misleading information to the debtors concerning the payoff due on the eve of the foreclosure sale and found that bankruptcy law requires better notice than that which was given, albeit notice was given in full compliance with California law.

We do not find *In re Tome* compelling authority. It is a decision of the Bankruptcy Court, Central District of California, and is not binding authority on this court ▮ Although we are obligated to follow the decisions of the United States Supreme Court, we are not bound by the decisions of the lower federal courts. "[T]he prevailing view appears to be that the . . . 'decisions of the lower federal courts on federal questions are merely persuasive . . . . Where lower federal court precedents are divided or lacking, state courts must necessarily make an independent determination of federal law.' " (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 780, p. 751.) *In re Tome* has been rejected and severely criticized by other federal bankruptcy courts. *In re Jauregui* (Bankr. E.D. Cal. 1996) 197 B.R. 673 rejected *Tome*: "With the exception of some language admitted to be dicta in *In re Ellis*, 60 B.R. 432, 436 (9th Cir. BAP 1985), the court in *Tome* cites no other authorities for [its]

position. Rather, it follows law that is not, in fact, known to exist. California law, which the court notes does not limit the number of sale continuances if a bankruptcy is pending, clearly does not require further notice of any kind when a continued sale follows a termination of the automatic stay. California law merely requires in Civil Code § 2924g(d) that the sale cannot take place until seven days after the stay terminates, absent an express court order to the contrary. . . . [¶] It is important to note that the problems noted in *Tome* and this case arise only when the notice of sale occurs prior to the bankruptcy filing. If foreclosure had not begun or if the notice of sale had not been given, no sale can occur without actual notice. A debtor who ignores or chooses to forget the status of a pending foreclosure should rightly bear the consequences of doing so." (*In re Jauregui, supra,* 197 B.R. at pp. 674, 675.)

*In re Thomas* (Bankr. D. Ariz. 1995) 194 B.R. 641 also declined to follow the holding of *Tome.* "From [its particular] circumstances, the *Tome* court concluded that republication of the notice of sale and notice to the owner of the property was required. The better analysis would have been to consider that the debtors, the Chapter 13 trustee, and the unsecured creditors originally had notice of the motion to vacate the stay. . . . Once the stay was vacated, the creditor could pursue its rights and remedies under the applicable state law and the debtors and unsecured creditors could bid at the trustee's sale or take other appropriate action to protect their rights. Perhaps the facts were so egregious in *Tome* that a state court would have set aside the trustee's sale. However, that decision should have been left solely to the state courts." (*In re Thomas, supra,* 194 B.R. at p. 647.)

In our view *Tome* is not persuasive and we agree with the proposition that debtors bear the responsibility to remain informed about the status of their property that has been put into foreclosure prior to the commencement of their bankruptcy. If the secured creditor has fully complied with Civil Code section 2924f before the debtors have filed for bankruptcy, no further notice is required as a matter of law. After obtaining relief from the mandatory stay, World was not required to serve, post, publish, or give any further notices of sale to the Tullys before proceeding with the sale of the property. If the trustee follows the procedure for oral postponements, "no further notice of sale by publication, posting or mailing is otherwise required." (4 Miller & Starr, Cal. Real Estate, *supra,* Deeds of Trust and Mortgages § 9:148, p. 481; Civ. Code, § 2924g, subd. (d); *Macalma* v. *United Bank of Texas* (Bankr. N.D. Cal. 1995) 192 B.R. 751, 753, 754 [declining to follow *Tome*; under United States Supreme Court decision, state law governs].)

*Disposition*

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Epstein, J., and Hastings, J., concurred.

A petition for a rehearing was denied August 8, 1997, and appellants' petition for review by the Supreme Court was denied October 1, 1997.