89 Cal.Rptr.2d 519 (1999)
75 Cal.App.4th 823
Jennifer CAMPBELL, a Minor, etc., Plaintiff and Appellant,
v.
Eric DERYLO, Defendant and Respondent.
No. C030104.
Court of Appeal, Third District.
October 14, 1999.
Review Denied January 13, 2000.[*]
*520 Law Offices of Edwin E. Williams and Edwin E. Williams, III, Sacramento, for Plaintiff and Appellant.
Caulfield, Davies & Donahue, James R. Donahue, Sacramento, and Catherine A. Woodbridge, Sacramento, for Defendant and Respondent.
CALLAHAN, J.
Jamie Xelowski, as guardian ad litem of her daughter Jennifer Campbell, a minor, plaintiff, appeals from a judgment granting defendant summary judgment in this negligence action against defendant Eric Derylo. The trial court ruled that the doctrine of primary assumption of risk precluded plaintiff from recovering for injuries *521 sustained when defendant's runaway snowboard hit Jennifer in the back. We shall reverse the judgment.

Factual and Procedural Background
On January 29, 1994, Jennifer, then 11 years old, was skiing down the World Cup ski run at the Heavenly Valley Ski Resort when she stopped and removed her skis due to ice on the slope. She walked down the remainder of the hill and at the bottom sat down to put her skis back on. At this time defendant Derylo, then age 17, was snowboarding down the same run. He stopped approximately 100 yards from the bottom and removed his snowboard due to fatigue and ice on the slope. After he had removed his feet from the bindings, the snowboard slid out of his control and down the slope, hitting Jennifer in the lower back.
An El Dorado County ordinance, as well as the Skier Responsibility Code posted at Heavenly Valley, require participants to wear a retention strap that attaches to the bindings of the board and is secured to the snowboarder's leg or boot. For purposes of this motion, it is uncontested that defendant's snowboard was not equipped with such a strap on the day of the accident.
Defendant moved for summary judgment on the basis of assumption of risk. The trial court granted the motion on the ground that the danger of being injured by runaway snowboards was inherent in the sport of skiing and there was no evidence of recklessness on the part of defendant. Plaintiff appeals.

DISCUSSION
On appeal from an order granting summary judgment, the reviewing court conducts a de novo examination of the record to determine whether the moving party was entitled to summary judgment as a matter of law or whether genuine issues of material fact remain. (Krieger v. Nick Alexander Imports, Inc. (1991) 234 Cal.App.3d 205, 212, 285 Cal.Rptr. 717.)
"We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. The moving party bears the burden of proving that the claims of the adverse party are entirely without merit on any legal theory. The opposition must demonstrate only the existence of at least one triable issue of fact, and all doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion." (Jackson v. Ryder Truck Rental, Inc. (1993) 16 Cal. App.4th 1830, 1836, 20 Cal.Rptr.2d 913, citations omitted.)
The trial court concluded that primary assumption of the risk barred plaintiffs action because injury from runaway snowboards is an "everyday risk in the sport of skiing or snowboarding." Plaintiff contends that primary assumption of risk does not bar this action because defendant's use of a snowboard unequipped with a retention strap amounted to conduct outside the inherent nature of the sport.
In Knight v. Jewett (1992) 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 and its companion case Ford v. Gouin (1992) 3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724, the Supreme Court concluded that the ordinary duty of care to avoid injury to others is modified by the doctrine of "primary assumption of risk." Primary assumption of the risk negates duty and constitutes a complete bar to recovery. (Knight, supra, at pp. 309-310, 314-316, 11 Cal.Rptr.2d 2, 834 P.2d 696.) Whether primary assumption of the risk applies depends on the nature of the sport or activity in question and the parties' relationship to that activity. (Id. at p. 313, 11 Cal.Rptr.2d 2, 834 P.2d 696.) In the context of sports, the question turns on "whether a given injury is within the `inherent' risk of the sport." (See Staten v. Superior Court (1996) 45 Cal.App.4th 1628, 1635, 53 Cal. Rptr.2d 657.)
In Knight, a defendant carelessly knocked over a coparticipant and stepped *522 on her hand during a touch football game. (3 Cal.4th at pp. 300-301, 11 Cal.Rptr.2d 2, 834 P.2d 696.) The conduct was deemed an inherent risk of the sport and therefore recovery was barred under primary assumption of risk. (Id. at p. 321, 11 Cal.Rptr.2d 2, 834 P.2d 696.) The court in Knight reasoned that "... vigorous participation in such sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct." (Id. at p. 318, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
In the context of skiing, courts have held that primary assumption of the risk applies to bar recovery for "... moguls on a ski run (Knight v. Jewett, supra, 3 Cal.4th 296, 315-316, 11 Cal.Rptr.2d 2, 834 P.2d 696), trees bordering a ski run (Danieley v. Goldmine Ski Associates, Inc. (1990) 218 Cal.App.3d 111 [266 Cal.Rptr. 749]), snow-covered stumps (Wright v. ML Mansfield Lift (D.Vt.1951) 96 F.Supp. 786), and numerous other conditions or obstacles such as variations in terrain, changes in surface or subsurface snow conditions, bare spots, other skiers, snowmaking equipment, and myriad other hazards which must be considered inherent in the sport of skiing." (O'Donoghue v. Bear Mountain Ski Resort (1994) 30 Cal. App.4th 188, 193, 35 Cal.Rptr.2d 467.) A runaway snowboard resulting from ordinary skier carelessness would seem to fit within the realm of those risks inherent to the sport.[1]
Knight however does not grant unbridled legal immunity to all defendants participating in sporting activity. The Supreme Court has stated that "it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." (3 Cal.4th at pp. 315-316, 11 Cal.Rptr.2d 2, 834 P.2d 696, italics added.) Thus, even though "defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself," they may not increase the likelihood of injury above that which is inherent. (Id. at p. 315, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
The principle is illustrated in the skiing context in Freeman v. Hale (1994) 30 Cal. App.4th 1388, 1396, 36 Cal.Rptr.2d 418. In Freeman the defendant had consumed alcoholic beverages to the point of inebriation prior to skiing. While on the slopes defendant collided with plaintiff coparticipant, rendering her a quadriplegic. (Id. at p. 1391, 36 Cal.Rptr.2d 418.) The defendant claimed he was immune from liability because the plaintiff had assumed the risk of harm by participating in the sport. (Id. at p. 1391, 36 Cal.Rptr.2d 418.) The Fourth District reversed summary judgment for the defendant.
While conceding that inadvertent collisions are an inherent risk of skiing and therefore assumed by participants (30 Cal. App.4th at p. 1395, 36 Cal.Rptr.2d 418), Freeman pointed out that the consumption of alcoholic beverages, an activity not ordinarily associated with skiing, may have unnecessarily increased the risk of collision. Furthermore, "the increased risks presented by the consumption of alcohol are not inherent in the sport of skiing." (Id. at p. 1396, 36 Cal.Rptr.2d 418.) A skier has a duty not to increase the risks of the sport beyond those inherent, and summary judgment is improper where the *523 circumstances suggest that the defendant engaged in activity that increased the risk. (Id. at p. 1397, 36 Cal.Rptr.2d 418.)
In Lowe v. California League of Prof. Baseball (1997) 56 Cal.App.4th 112, 123, 65 Cal.Rptr.2d 105, the plaintiff was a spectator at a minor league baseball game. He was sitting in an uncovered section of the stadium when a foul ball struck him in the face. Immediately prior to being struck, the team's mascot was behind the plaintiff and his tail was hitting the plaintiff on the head and shoulders. The plaintiff turned to see what the mascot was doing and as he was turning back around to face the field, a foul ball hit him. (Id. at pp. 116 118, 65 Cal.Rptr.2d 105.)
While agreeing that the risk of being hit with a foul ball was inherent in the sport of baseball and therefore assumed by spectators, the court, relying on Knight, held that the defendant had a duty not to increase the risk of a spectator being struck. (56 Cal.App.4th at p. 123, 65 Cal.Rptr.2d 105.) Summary judgment was improper because, "... whether such antics [by the mascot] increased the inherent risk to plaintiff is an issue of fact to be resolved at trial." (Ibid.; see also Bronco v. Kearny Moto Park, Inc. (1995) 37 Cal.App.4th 184, 193, 43 Cal.Rptr.2d 392 [bicycle jump's unsafe design may have increased risk to bicycle racers].)
Finally, in Yancey v. Superior Court (1994) 28 Cal.App.4th 558, 33 Cal.Rptr.2d 777, the court ruled that a participant in discus throwing owed a duty to a coparticipant to ascertain that the target area was clear before releasing the discus onto the playing field. In reversing summary judgment, the court found that the inherent risks of discus throwing do not include being injured by a discus thrown with no regard for its potential path. (Id. at p. 566, 33 Cal.Rptr.2d 777.)
Here, we are confronted with the question whether defendant's use of a snowboard without a retention strap could be found by a jury to have increased the inherent risk of injury to coparticipants from a runaway snowboard.[2] The factual showing below demonstrates triable issues of fact.
Both El Dorado County Ordinance No. 9.20.040, subdivision A6, along with the Skier Responsibility Code which was posted at Heavenly Valley, require the use of a retention strap. These safety regulations demonstrate a recognition that retention straps reduce the risk of injury from runaway ski equipment. As the declaration of plaintiffs expert explains, this requirement is especially important when it comes to snowboards because, unlike skis which are equipped with automatic braking devices, snowboards have no built-in stopping mechanism. A jury could find that, by using a snowboard without the retention strap, in violation of the rules of the ski resort and a county ordinance, defendant unnecessarily increased the danger that his snowboard might escape his control and injure other participants such as plaintiff. The absence of a retention strap could therefore constitute conduct not inherent to the sport which increased the risk of injury.[3]
*524 Our conclusion is consistent with the test advanced by Freeman to determine what risks are inherent in a sport: "[C]onduct is totally outside the range of ordinary activity involved in the sport (and thus any risks resulting from that conduct are not inherent to the sport) if the prohibition of that conduct would neither deter vigorous participation in the sport nor otherwise fundamentally alter the nature of the sport." (30 Cal.App.4th at p. 1394, 36 Cal.Rptr.2d 418.) Freeman found that "[t]he consumption of alcoholic beverages could be prohibited during or shortly before skiing without fundamentally altering the nature of the sport." (Id. at p. 1396, 36 Cal.Rptr.2d 418.) The doctrine of primary assumption of risk was not an absolute bar to recovery because the risks associated with skiing while under the influence of alcohol are not inherent in the sport and thus not assumed by fellow participants.
In Lowe the court used similar reasoning, to conclude that "... the antics of the mascot are not an essential or integral part of the playing of a baseball game," and "the game can be played in the absence of such antics." (56 Cal.App.4th at p. 123, 65 Cal.Rptr.2d 105.)
Thus, "the key inquiry here is whether the risk which led to plaintiffs injury involved some feature or aspect of the game which is inevitable or unavoidable in the actual playing of the game." (Lowe, supra, 56 Cal.App.4th at p. 123, 65 Cal. Rptr.2d 105.) Use of a mandatory retention strap would not impede or alter the sport of snowboarding. On the contrary, retention straps can be used "without fundamentally altering the nature of the sport." (Freeman, supra, 30 Cal.App.4th at p. 1396, 36 Cal.Rptr.2d 418.) Furthermore, use of a retention strap would in no way chill or deter vigorous participation in skiing or snowboarding. (Knight, supra, 3 Cal.4th at p. 317, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
Defendant claims that he was entitled to summary judgment in any event, because he would necessarily have removed the strap in order to walk down the slope. According to this argument, the board would have hit plaintiff regardless of whether it was equipped with a strap. Defendant is essentially arguing that proximate cause was lacking as a matter of law.
However, the declaration of plaintiffs expert established that, used properly, the retention strap would have tethered defendant's leg or boot to his snowboard. Defendant offered no evidence to refute the possibility that the strap would have provided him an opportunity to secure control of the board and prevent the accident. The record therefore presents a triable issue as to whether defendant's use of a snowboard without a retention strap was the proximate cause of plaintiffs injuries. Since all inferences in a summary judgment dispute are to be drawn in favor of the party opposing the motion (Tully v. World Savings & Loan Assn. (1997) 56 Cal.App.4th 654, 660, 65 Cal.Rptr.2d 545), defendant did not eliminate proximate cause as a triable issue.
We conclude that defendant owed a duty of care not to increase the risks of skiing beyond those inherent to the sport. The doctrine of primary assumption of the risk is not an absolute bar to recovery on these facts, because the lack of a retention strap could be found by a jury to have increased the risk of harm to plaintiff beyond what was inherent in the sport of skiing. Defendant also did not establish as a matter of law that the lack of a retention strap was not a proximate cause of plaintiffs injuries. Accordingly, summary judgment was improperly granted.

*525 DISPOSITION

The judgment is reversed. Plaintiff shall recover costs.
KOLKEY, J., concurs.
BLEASE, Acting P.J., concurs in the result.
NOTES
[*] Kennard, J., and Chin, J., dissented.
[1] We quickly dismiss plaintiff's contention that there is a triable issue over whether plaintiff and defendant were coparticipants. At Heavenly, skiers and snowboarders share the same slope. Both parties were in a designated ski area; moreover, putting on and taking off equipment is an integral part of the sport. Skiing, like ice skating, is a sport which may be engaged in just as well alone as with others. There is no requirement that athletes be acquainted with each other or join together in order to be considered coparticipants within the meaning of Knight. (See Staten v. Superior Court, supra, 45 Cal.App.4th at p. 1633, 53 Cal.Rptr.2d 657 [figure skater assumes risk of collision with other skaters even when skating solo, where "proximity to one another created certain risks of collision"].)
[2] At the hearing on the motion, plaintiff's counsel listed four separate acts or omissions by defendant which he contended went beyond "ordinary careless conduct" and increased the inherent risk to Jennifer: (1) failure to wear a retention strap: (2) taking the board off on a steep slope without consideration for downhill skiers; (3) failure to move to the edge of the slope before removing his snowboard; and (4) failure to leave one foot in his snowboard and walk down the slope. This appeal focuses solely on the absence of a retention strap. We agree with plaintiff's implicit concession that each of the other instances of misfeasance mentioned by counsel constitutes mere ordinary negligence which is not actionable under the doctrine of primary assumption of the risk.
[3] We decline to address the issue of whether Evidence Code section 669, read in conjunction with El Dorado County Ordinance No. 9.20.040, subdivision A6, establishes an independent duty of care which overrides the primary assumption of risk doctrine. The Supreme Court granted review in Cheong v. Antablin (1997) 16 Cal.4th 1063, 68 Cal. Rptr.2d 859, 946 P.2d 817, purportedly to settle this question, but ended up avoiding it by concluding that the ordinance evinced "no clear intent to modify common law assumption of risk principles." (Id. at p. 1069, 68 Cal.Rptr.2d 859, 946 P.2d 817.) As evidenced by the four separate concurring opinions in Cheong (including one by the author of the majority opinion Justice Chin), there appears to be no clear consensus on the high court about this issue.